UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT AND TERRI L. WARD, § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | CIVIL ACTION H-08-806 |
| § | |
| UNITED STATES OF AMERICA, § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM AND ORDER**

Pending before the court is the defendant United States' motion for summary judgment. Dkt. 31. After review of the motion, the responses, and the applicable law, the motion is GRANTED.

**BACKGROUND**

Plaintiffs Robert and Terri L. Ward filed this suit to recover a tax refund in the amount of $119,821, relating to their 1996 and 1997 taxes. Dkt. 1. The Wards contend the money is owed them because they timely filed joint Forms 1040X for the tax years ending December 31, 1996 and December 31, 1997, reporting net operating loss carrybacks from 2001, which resulted in overpayments for both years. *Id.* at 1–2. The IRS, however, sent the Wards a letter on March 15, 2006 disallowing the claims. *Id.* at 2. The United States now moves this court for summary judgment, contending that the Wards improperly deducted losses for one of their companies in the 2001 tax year, understated their gambling income on their 2001 tax return, and understated their overall income on their 2001 tax return. Dkt. 31. Taken altogether, these three items eliminate the net operating loss and, therefore, the Wards are not entitled to the tax refund. *Id.*

### ANALYSIS

**A.   Summary Judgment Standard**

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). Upon a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED. R. CIV. P. 56(e). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden

of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B.     Application**

The United States contends that the Wards are not owed the tax refund because: (1) they failed to elect S corporation status for their company The Gathering, Inc., and, consequently, the

3

$125,109 in losses the Wards claimed for The Gathering cannot flow through to their 2001 tax return; (2) the Wards understated their gambling income on their 2001 tax return, resulting in an additional $40,664 in gambling income; and (3) the Wards understated their overall income on their 2001 tax return by $231,973.59. Collectively, the United States argues, these items eliminate the net operating loss the Wards claimed as the basis of their tax refund. Dkt. 31 at 2.

      *1.*     *The Gathering's Losses*

In 2001, Terri Ward operated a Christian bookstore The Gathering, which was located in Hot Spring, Arkansas. Dkt. 31 at 3. The Gathering was incorporated in the State of Arkansas as a for profit corporation on October 13, 2000. *Id.* at 4. The Wards claimed $125,109 in losses for The Gathering, as an S corporation, on Schedule E of their 2001 tax return. *Id.* The IRS, however, has no record of The Gathering ever filing a Form 2553 (required to become an S corporation), a Form 1120 S (an income tax return for an S corporation), or a Schedule K-1 (used to report items from pass-through entities). *Id.* at 5. Therefore, the United States argues, The Gathering is not an S corporation and the shareholders (here, the Wards) cannot elect to pass through the corporation's profits and losses directly onto their individual tax returns. *Id.* Additionally, even if The Gathering were an S corporation, the Wards still could not claim the $125,109 in losses for the company because they failed to substantiate the losses. *Id.*

In their response to the motion for summary judgment, the Wards state that there is a genuine issue of material fact as to whether the Wards were entitled to deduct $125,109 in losses for The Gathering and in support "submit an affidavit, documentary evidence, and Movants' pleadings, as summary judgment evidence." Dkt. 35 at 2. The Wards "will show by affidavits attached and evidence presented at the time of trial that the [Wards] were entitled to take the operating loss at the time of filing." *Id.* Additionally, the Wards "will further show that even if The Gathering, Inc. was

4

[listed as a corporation, rather than an S corporation] that the operating loss would still have been allowed and would have resulted in the same net operating loss." *Id.*

However, the only documentation attached to the Wards' response is an affidavit from Tyrone S. Wolter, a certified public accountant. Dkt. 25, Ex. 1. In his affidavit, Wolter states that he has reviewed the Wards' income tax returns for 1996 and 2001, along with the United States' motion for summary judgment; however,

> [t]hese documents are insufficient to establish the facts alleged in the Motion [for summary judgment] because the work papers of the person who prepared them are not included with the exhibits. Without the work papers and notes of the preparer, it is not possible to verify that the amounts alleged by IRS Agent Candace Brown are accurate. I will need to review those work papers and notes to properly analyze these exhibits but I understand that the Government has not provided them.

*Id.* In its reply, the United States contests Wolter's opinion that the workpapers are necessary because Wolter is not a designated expert nor qualified to pass judgment on the sufficiency of the government's evidence. Dkt. 37 at 2–3. However, the United States attached all of Agent Brown's workpapers to the reply. See Dkt. 37, Ex. 29. With respect to The Gathering's losses, Agent Brown had performed only basic subtraction to demonstrate how the disallowed deduction reduced the net operating loss claimed by the Wards. *Id.* at 3. The Wards did not file, nor request leave to file, a sur-reply.

After review of the evidence, it is clear that the Wards have wholly failed to demonstrate a genuine issue of material fact as to the $125,109 in losses for The Gathering. As the party that bears the burden to prove they were entitled to the claimed net operating loss deduction, they must come forward with specific facts to show a genuine issue for trial. *See INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84, 112 S. Ct. 1239 (1992). The Wards' argument that they will produce evidence at trial is insufficient. Having offered no evidence to substantiate the deduction, summary judgment is

granted on this issue and the Wards are not entitled to claim $125,109 in losses for The Gathering on their 2001 tax return.

### 2. *Gambling Income*

The United States contends the Wards understated their 2001 gambling income. The Wards stated their gambling winnings and losses were $251,528 (the losses equaled the winnings), but their Forms W-2G show their gambling income was actually $310,954 and activity statements from casinos show the Wards' losses in 2001 amounted to $270,290.[1] Dkt. 31 at 6. Therefore, the Wards should have reported $40,664 in gambling income on their 2001 tax return, which would have decreased the $343,338 net operating loss by $29,690. *Id.* at 7. In their response, the Wards once again point to the affidavit by Wolter stating that without Agent Brown's workpapers, there is insufficient evidence to support to support the United States' motion for summary judgment, but offer no evidence to dispute this additional gambling income. See Dkt. 35.

Gambling winnings are included in gross income, and recreational gamblers may deduct their gambling losses as itemized deductions on their taxes, up to the amount of their winnings. *See Laplante v. Comm'r*, T.C. Memo 2009-226, 98 T.C.M. (CCH) 305 (2009). However, the taxpayer bears the burden of proving that they are entitled to deductions, and "[i]mplicit in this burden is the requirement that taxpayers must prove the amount of gambling winnings as well as losses." *Id.* at 6. Having put forth no evidence to dispute the $40,664 of net gambling winnings, summary judgment is granted on this matter.

---

[1] The Wards' Forms W-2G did not actually capture all of their gambling winnings, but just those winnings that exceeded $1,200. *See* Dkt. 31, Ex. 21. The United State, however, is basing its calculations only on the amounts reported in the Forms W-2G.

6

*3.     Overall Income*

Lastly, the United States argues that the Wards understated their overall 2001 income by $231,973.59. The IRS determined this amount by reconciling taxable deposits from the three banks the Wards reported using in 2001—Summit Bank, Montrose Bank, and Firstar—with the Wards' reported income on their 2001 tax return. Dkt. 31 at 8. To avoid duplicate deposits, the IRS excluded transfers between accounts, deposits that were refunded, and deposits from bank loans or federal tax refunds. *Id.* This $231,973.59 of additional income reduces the $343,338 net operating loss by $231,973.59. The Wards once again contend there is a genuine issue of material fact as to this additional income, but offer no evidence, save Wolter's affidavit, to demonstrate an issue at trial. Therefore, the summary judgment is granted on this issue and the court finds that the Wards have understated their 2001 income by $231,973.59.

Collectively, these three items—the disallowed deduction for $125,109 in losses for The Gathering, the additional $40,664 in gambling income, and the $231,973.59 in additional unreported income—completely eliminate the net operating loss of $343,338 the Wards claimed on their 2001 tax return.[2] As a result, the Wards are not entitled to the $119,821 refund of their 1996 and 1997 taxes.

---

[2] The $343,338 net operating loss is reduced by $125,109 (disallowed deduction for The Gathering), $29,690 (because of the additional $40,664 in gambling income), and $231,973.59 (additional understated income), equaling -43,434.59.

7

## CONCLUSION

For the reasons stated above, the United States' motion for summary judgment is granted. The Wards are not entitled to the $119,821 refund they seek.

It is so ORDERED.

Signed at Houston, Texas on August 16, 2010.

_____
Gray H. Miller
United States District Judge